1 | Gary T. Lafayette (SBN 88666)
glafayette@lkclaw.com
2 | Brian H. Chun (SBN 215417)
bchun@lkclaw.com
3 | LAFAYETTE & KUMAGAI LLP
4 | 1300 Clay Street, Suite 810
Oakland, California  94612
5 | Telephone: (415) 357-4600

6 | Steven A. Zalesin (*Pro Hac Vice*)
sazalesin@pbwt.com
7 | Jane Metcalf (*Pro Hac Vice*)
jmetcalf@pbwt.com
8 | Dakotah M. Burns (*Pro Hac Vice*)
dburns@pbwt.com
9 | PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
10 | New York, New York  10036
Telephone (212) 336-2110
11 |
12 |
*Attorneys for Defendant The Coca-Cola Company*
13 |

14 | **UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
15 |

16 |                                              Case No. 3:23-cv-01446-VC

17 | GARY REYNOLDS, on behalf of
himself, all others similarly situated, and
18 | the general public,                          **NOTICE OF MOTION AND MOTION TO
DISMISS; MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT
THEREOF**
19 |
20 |                   Plaintiff,
                                                 Date:      July 13, 2023
21 |       vs.                                    Time:      10:00 am
                                                 Place:     Courtroom 5, 17th Floor
22 | THE COCA-COLA COMPANY,                       Judge:     Hon. Vince Chhabria
23 |                   Defendant.
24 |
25 |
26 |
27 |
28 |

1

### NOTICE OF MOTION

2      **PLEASE TAKE NOTICE** that on July 13, 2023 at 10:00 am, or as soon thereafter as the

3   matter may be heard, in Courtroom 5 before the Honorable Vince Chhabria of the Northern District

4   of California, Defendant The Coca-Cola Company will and hereby does move the Court to dismiss

5   Plaintiff Gary Reynolds's Complaint for failure to state a claim.  Plaintiff alleges violations of the

6   Unfair Competition Law, *Id.* § 17200, *et seq.*, the False Advertising Law, Cal.  Bus. & Prof. Code

7   § 17500, *et seq.*, the California Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*,

8   and brings a common-law claim for breach of express and implied warranties, negligent and

9   intentional misrepresentation, and unjust enrichment.

10      This motion is made pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6),

11   on the grounds set forth in the accompanying memorandum of points and authorities.

12

Dated:  June 5, 2023

13                                            Respectfully submitted,

14                                            /s/ *Steven A. Zalesin*

15                                            Steven A. Zalesin (*Pro Hac Vice*)
                                             sazalesin@pbwt.com
16                                            Jane Metcalf (*Pro Hac Vice*)
                                             jmetcalf@pbwt.com
17                                            Dakotah M. Burns (*Pro Hac Vice*)
                                             dburns@pbwt.com
18                                            PATTERSON BELKNAP WEBB & TYLER LLP
19                                            1133 Avenue of the Americas
                                             New York, New York  10036
20                                            Telephone: (212) 336-2110

21                                            Gary T. Lafayette (SBN 88666)
                                             glafayette@lkclaw.com
22                                            Brian H. Chun (SBN 215417)
                                             bchun@lkclaw.com
23                                            LAFAYETTE & KUMAGAI LLP
                                             1300 Clay Street, Suite 810
24                                            Oakland, California  94612
                                             Telephone: (415) 357-4600
25

26                                            *Attorneys for Defendant The Coca-Cola Company*

27

28

1

## TABLE OF CONTENTS

2
**Page**

3  NOTICE OF MOTION.................................................................................................1

4  STATEMENT OF ISSUES .........................................................................................1

5  PRELIMINARY STATEMENT ................................................................................2

6  STATEMENT OF FACTS .........................................................................................3

7      A.    The Products ........................................................................................3

8      B.    FDA Regulations ................................................................................5

9      C.    Plaintiff's Allegations ........................................................................6

10  ARGUMENT .............................................................................................................7

11  I.    PLAINTIFF FAILS TO STATE A PLAUSIBLE CLAIM OF DECEPTION ...................7

12  II.   PLAINTIFF'S CLAIMS ARE PREEMPTED BY FEDERAL LAW ..............................10

13  III.  PLAINTIFF'S ANCILLARY CLAIMS ALSO FAIL .........................................13

14      A.    Express and Implied Warranties ........................................................13

15      B.    Negligent and Intentional Misrepresentation....................................13

16      C.    Unjust Enrichment ............................................................................14

17  IV.   PLAINTIFF LACKS STANDING TO SEEK INJUNCTVE RELIEF ...........................15

18  CONCLUSION.........................................................................................................15

19

20

21

22

23

24

25

26

27

28

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Andrade-Heymsfield v. NextFoods, Inc.*,
  2022 WL 1772262 (S.D. Cal. Apr. 27, 2022) ......................................................................8, 10

*Astiana v. Hain Celestial Grp., Inc.*,
  783 F.3d 753 (9th Cir. 2015) .........................................................................................................6

*Baird v. Samsung Elecs. Am., Inc.*,
  522 F. Supp. 3d 679 (N.D. Cal. 2021) ...................................................................................13, 14

*Becerra v. Dr. Pepper/Seven Up, Inc.*,
  945 F.3d 1225 (9th Cir. 2019) ..................................................................................................7, 10

*Cheslow v. Ghirardelli Chocolate Co.*,
  445 F. Supp. 3d 8 (N.D. Cal. 2020) ...............................................................................................8

*Choon's Design, LLC v. ContextLogic Inc.*,
  No. 19-cv-05300 (HSG), 2020 WL 6891824 (N.D. Cal. Nov. 24, 2020) .............................14

*Cimoli v. Alacer Corp.*,
  546 F. Supp. 3d 897 (N.D. Cal. 2021) .........................................................................................15

*Clark v. Perfect Bar, LLC*,
  816 F. App'x 141 (9th Cir. 2020) .......................................................................................8, 9, 12

*Costa v. Reliance Vitamin Co.*,
  No. 3:22-CV-04679-WHO, 2023 WL 2989039 (N.D. Cal. Apr. 18, 2023) ..........................14

*Fernandez v. Atkins Nutritionals, Inc.*,
  2018 WL 280028 (S.D. Cal. Jan. 3, 2018) ...................................................................................15

*Frison v. Accredited Home Lenders, Inc.*,
  No. 10-cv-777 (JM), 2011 WL 2729241 (S.D. Cal. July 13, 2011) ........................................14

*Hadley v. Kellogg Sales Co.*,
  273 F. Supp. 3d 1052 (N.D. Cal. 2017) .......................................................................................12

*Howard v. Hain Celestial Grp., Inc.*,
  No. 22-CV-00527-VC, 2023 WL 1960678 (N.D. Cal. Feb. 13, 2023)
  (Chhabria, J.) ..............................................................................................................................6, 11

*Johnson-Jack v. Health-Ade LLC*,
  587 F. Supp. 3d 957 (N.D. Cal. 2022) ...........................................................................................9

ii

*Krommenhock v. Post Foods, LLC*,
    255 F. Supp. 3d 938 (N.D. Cal. 2017) ................................................................5, 12

*Krommenhock v. Post Foods, LLC*,
    334 F.R.D. 552 (N.D. Cal. 2020) .......................................................................5, 12

*LeGrand v. Abbott Lab'ys*,
    No. 22-CV-05815-TSH, 2023 WL 1819159 (N.D. Cal. Feb. 8, 2023) ................................12

*Marble Bridge Funding Grp., Inc. v. Euler Hermes Am. Credit Indem. Co.*,
    225 F. Supp. 3d 1034 (N.D. Cal. 2016) ..................................................................14

*Perez v. Kroger Co.*,
    No. 217CV02448ODWAGR, 2017 WL 3601998 (C.D. Cal. Aug. 18, 2017) ...................6, 11

*Pershing Pac. W., LLC v. Ferretti Grp., USA, Inc.*,
    2013 WL 275676 (S.D. Cal. Jan. 24, 2013) ............................................................13

*Red v. Kraft Foods, Inc., No. CV 10–1028–GW(AGRx)*,
    2012 WL 5504011 (C.D. Cal. Oct. 25, 2012) ...........................................................8

*Reid v. Johnson & Johnson*,
    780 F.3d 952 (9th Cir. 2015) ...........................................................................7

*Reiter v. Cooper*,
    507 U.S. 258 (1993) ...................................................................................6

*Stearns v. Select Comfort Retail Corp.*,
    2009 WL 1635931 (N.D. Cal. June 5, 2009) ...........................................................13

*Stuart v. Cadbury Adams USA, LLC*,
    458 F. App'x 689 (9th Cir. 2011) .....................................................................10

*Truxel v. Gen. Mills Sales, Inc.*,
    No. C 16-04957 JSW, 2019 WL 3940956 (N.D. Cal. Aug. 13, 2019) ..........................8, 9

*Weiss v. Trader Joe's*,
    838 F. App'x 302 (9th Cir. 2021) .....................................................................10

*Yoshida v. Campbell Soup Co.*,
    2022 WL 1819528 (N.D. Cal. May 27, 2022) .......................................................9, 10

**Statutes**

21 U.S.C. § 343(q)(1)(D)(E) ...................................................................................5, 11

21 U.S.C. § 343(r) ..............................................................................................11

iii

California Consumers Legal Remedies Act ......................................................... *passim*

Unfair Competition Law ...................................................................................... *passim*

False Advertising Law ......................................................................................... *passim*

**Other Authorities**

21 C.F.R. § 100.1(c)(4) ...............................................................................................11

21 C.F.R. § 101.13(b) ..........................................................................................5, 6, 11

21 C.F.R. § 101.60(c)(2) ........................................................................................6, 11

21 C.F.R. § 101.65(d)(2)(iv) ......................................................................................11

21 C.F.R. § 104.20 .......................................................................................................11

iv

1

## STATEMENT OF ISSUES

2    1.    Plaintiff alleges that the labels of certain Minute Maid™ fruit juice boxes—which

3  state, among other things, that fruit juice is "Good For You" and can be "Part of a Healthy,

4  Balanced Diet"—are misleading because fruit juice is high in sugar.  Would a reasonable consumer

5  be misled by these labeling claims, where (i) Plaintiff has not identified a single misrepresentation

6  about the amount of sugar in the products; (ii) the sugar content is clearly and accurately disclosed

7  on the products' labels; and (iii) Plaintiff has all the information he needs to decide for himself

8  whether fruit juice can be a healthy part of his individual dietary practices?

9    2.    The federal Food, Drug and Cosmetics Act ("FDCA") grants the U.S. Food and

10  Drug Administration ("FDA") exclusive authority to regulate the labeling of beverages, and

11  prohibits states from imposing any nonidentical labeling requirements.    FDA rules allow

12  manufacturers to make health claims related to the presence or absence of certain nutrients—

13  including sugar and vitamins—in a food or beverage, *regardless* of the product's sugar content.

14  Here, the statements "Good for You" and "Part of a Healthy, Balanced Diet" appear in direct

15  connection to the claims that the products have "No Sugar Added" and are "an excellent source of

16  Vitamin C."  Is Plaintiff's state-law challenge to these labeling claims preempted by the FDCA?

17    3.    Can Plaintiff state a viable claim for breach of warranty, intentional and negligent

18  misrepresentation, or unjust enrichment?

19    4.    Does Plaintiff have standing to pursue the remedy of injunctive relief, where he

20  admits that he now understands the relationship between the products' healthfulness and their

21  clearly disclosed sugar content, and he is therefore at no risk of future injury or deception?

22

23

24

25

26

27

28

1

1    Defendant The Coca-Cola Company ("Coca-Cola") respectfully submits this

2    memorandum of law in support of its motion to dismiss the Complaint of Plaintiff Gary Reynolds.

3                                **PRELIMINARY STATEMENT**

4    Plaintiff claims that the labels of Coca-Cola's Minute Maid™ fruit juice boxes (the

5    "Products")—which state, among other things, that fruit juice is "Good For You" and can be "Part

6    of a Healthy, Balanced Diet"—misled him to believe that "juice is healthy." According to Plaintiff,

7    _**all**_ fruit juice is unhealthy—"even if it is freshly pressed, 100 percent juice"—because its natural

8    sugar content purportedly "increases the risk of chronic diseases." Although he admits that the

9    Products' Nutrition Facts panels expressly disclose the Products' sugar content, he insists that he

10   could not possibly have understood the significance of that disclosure because he is not "a food

11   scientist." These allegations are fatally flawed and should be dismissed for numerous reasons.

12   *__First__*, no reasonable consumer would be misled about the Products' sugar content by the

13   labeling claims at issue here—particularly where the sugar content is clearly and accurately

14   disclosed elsewhere on the Products' labels. Plaintiff has not identified a single misrepresentation

15   about the Products' sugar content on the challenged labels. Instead, he bases his claims on the

16   assumption that sugar-conscious consumers will disregard the Products' clear sugar-content

17   disclosures, while interpreting non-sugar-related statements as guarantees of low sugar. Multiple

18   courts of this Circuit have rightly rejected that theory as contrary to common sense.

19   *__Second__*, the healthfulness of a beverage cannot be reduced to a single metric such as sugar

20   content. Whether a beverage with a moderate level of naturally occurring sugar is "healthy" will

21   depend on the beverage's other nutritional benefits, the particular health needs of the individual,

22   the amount of the beverage being consumed, and the consumer's overall diet, among other things.

23   Indeed, the Dietary Guidelines for Americans issued by the U.S. Departments of Health and

24   Human Services and Agriculture state that drinking "100% fruit juice without added sugars can be

25   part of a healthy dietary pattern," and recommend that "[b]everages that contribute beneficial

26   nutrients, such as .. . . 100% juice," should be among "the primary beverages consumed" by

27

28                                          2

Americans.  If Plaintiff has any concerns about the effects of the Products' sugar content on his health, he can simply consult the Nutrition Facts and decide for himself whether the Products should "be part of [his] healthy dietary pattern."  It is not the role of the courts to decide whether the Products are healthy *for him*.

*Third*, Plaintiff's claims are squarely preempted by the federal Food, Drug and Cosmetics Act ("FDCA").  The FDCA grants the U.S. Food and Drug Administration ("FDA") exclusive authority to regulate the labeling of beverages, and prohibits states from imposing any nonidentical labeling requirements.  FDA rules allow manufacturers to make health claims related to the presence or absence of a nutrient in a beverage, *regardless* of the product's sugar content.  Here, the statements "Good For You" and "Part of a Healthy, Balanced Diet" appear in direct connection to the claims that the Products have "No Sugar Added" and are an "Excellent Source of Vitamin C."  Courts of this District, including this Court, have routinely held that statements like these qualify as nutrient content claims under FDA rules.  Because FDA regulations allow such claims— irrespective of the products' natural sugar content—Plaintiff's state-law challenge to the Products' labeling is preempted by federal law.

These defects doom Plaintiff's claims under the Unfair Competition Law ("UCL"), False Advertising Law ("FAL"), and California Consumers Legal Remedies Act ("CLRA"), as well as his common-law claims for breach of warranty, negligent and intentional misrepresentation, and unjust enrichment.  The Complaint should be dismissed with prejudice.

## STATEMENT OF FACTS

### A.    The Products

Coca-Cola is a global beverage producer whose portfolio includes the Products.  Complaint ("Compl.") ¶ 14.  The front label of the Products' packaging truthfully states that the juice boxes contain "100% Juice."  *Id.* ¶ 19.  The side panel of the packaging indicates that the Products are "Good For You" and can be "Part of a Healthy, Balanced Diet."  *Id.*  In direct support of those two claims, the same side panel states that the Products have "No Sugar Added" and are an "Excellent

3

Source of Vitamin C," which "plays an important part in supporting the body's immune system and is also an antioxidant, which helps maintain healthy skin." *Id.*



*Id.* The same side panel informs consumers that the Products are "[n]ot a reduced calorie food" and encourages them to consult the "nutrition facts for sugar and calorie content." *Id.* The Nutrition Facts, in turn, expressly disclose the amount of sugar in the Products:



All of these statements about the nutrient content of the Products are true. In fact, the 2020-2025 Dietary Guidelines for Americans issued by the U.S. Departments of Health and Human

Services and Agriculture—which Plaintiff himself cites in his Complaint—state that drinking "100% fruit juice without added sugars can be part of a healthy dietary pattern," and recommend that "[b]everages that contribute beneficial nutrients, such as .. . . 100% juice," should be among "the primary beverages consumed" by Americans.[1]

### B.    FDA Regulations

The Products' labeling also complies with FDA regulations that govern health-related claims on beverage labels.  Most relevant here, FDA rules permit manufacturers to make express or implied "nutrient content claims" about a food or beverage.  *See* 21 C.F.R. § 101.13(b).  An express nutrient content claim includes "any direct statement about the level (or range) of a nutrient in the food," and an implied nutrient content claim "[s]uggests that the food, because of its nutrient content, may be useful in maintaining healthy dietary practices and is made in association with an explicit claim or statement about a nutrient."  *Id.* § 101.13(b)(1)-(2).

The "'magic words' that might create an implied nutrient claim do not need to be directly adjacent to the discussion of a nutrient to create an implied nutrient content claim"—instead, there need only be some "connection" between the health-related claim and the corresponding statement about the product's nutrient content, "given the words, their placement, and their context." *Krommenhock v. Post Foods, LLC*, 334 F.R.D. 552, 571 (N.D. Cal. 2020).  Although FDA "prohibits even true implied nutrient content claims where the product contains another 'disqualifying' nutrient that exceeds an amount established by regulation," it has specifically "identified [the] disqualifying nutrients" that fall under this prohibition—and "[s]ugar is not one of them."  *Krommenhock v. Post Foods, LLC*, 255 F. Supp. 3d 938, 956 (N.D. Cal. 2017).

The labeling claims at issue here are textbook examples of permissible "implied nutrient content claims" under FDA regulations.  The statements "No Sugar Added" and "Excellent Source of Vitamin C" are both express nutrient content claims under well-established law.  *See, e.g.*, 21

---

[1] U.S. Dep't of Health & Human Servs. and U.S. Dept. of Agric., *Dietary Guidelines for Americans 2020–2025*, at 35, 88, https://tinyurl.com/2p97yanf (last visited June 3, 2023).

1    U.S.C. § 343(q)(1)(D)(E) (listing both sugar and vitamins as "nutrients" within the meaning of the

2    FDCA); 21 C.F.R. § 101.60(c)(2) (identifying "No Sugar Added" as an example of a nutrient

3    content claim); *Perez v. Kroger Co.*, No. 217CV02448ODWAGR, 2017 WL 3601998, at *6 (C.D.

4    Cal. Aug. 18, 2017) (noting that "No Sugar Added" is a nutrient content claim under FDA rules);

5    *Howard v. Hain Celestial Grp., Inc.*, No. 22-CV-00527-VC, 2023 WL 1960678, at *3 (N.D. Cal.

6    Feb. 13, 2023) (Chhabria, J.) (holding that "excellent source of Vitamin C" is a nutrient content

7    claim).  And the statements "Good For You" and "Part of a Healthy Balanced Diet" appear directly

8    adjacent to these nutrient content claims on the same side panel of the Products' packaging.  *See*

9    *supra* at 4.  Because these claims are "made in association with an explicit claim or statement

10   about a nutrient," they are implied nutrient content claims under FDA rules.   21 C.F.R.

11   § 101.13(b)(2).  And because FDA does not prohibit implied nutrient content claims on the basis

12   of a product's sugar content, both claims are allowed under the plain language of FDA's rules.

13          **C.      Plaintiff's Allegations**

14          Plaintiff alleges that the Products' labeling misled him to believe that fruit juice "is

15   healthy."  Compl. ¶ 3.[2]  He insists that _**all**_ fruit juice is unhealthy—"even if it is freshly pressed,

16   100 percent juice"—because its natural sugar content "increases the risk of chronic diseases."  *Id.*

17

18   _____

19   [2]  The Products challenged in Plaintiff's Complaint include the following 100% fruit juice boxes: Apple,
     Apple White Grape, Mixed Berry, and Fruit Punch.  The Complaint makes passing reference to another
20   product, Minute Maid Lemonade drink box, which is not 100% juice and (unlike Minute Maid juice boxes)
     is not labeled "No Sugar Added."  *See* Complaint at 1 n.1 and Appendix A.  Because the allegations of the
21   Complaint concern fruit juice, as opposed to drinks that are not 100% juice and contain added sugar, the
     Lemonade variety is not properly before the Court.  Regardless, any claim premised on the Lemonade
22   variety should be dismissed under the doctrine of primary jurisdiction, which permits courts to dismiss
     claims that "contain some issue within the special competence of an administrative agency."  *Reiter v.*
23   *Cooper*, 507 U.S. 258, 268 (1993).  FDA has solicited public comment on a proposed rule limiting health
     claims on products above a certain threshold of added sugar content.  *See* Federal Register, "Food Labeling:
24   Nutrient Content Claims; Definition of Term 'Healthy'" (Sept. 29, 2022), https://tinyurl.com/yzf9kw4t.
     FDA's proposed rulemaking on this issue—which carefully weighs current nutrition science with an eye
25   toward imposing criteria for certain products and labeling claims, but not others—demonstrates that
     Congress entrusted these complex rules to an agency with specialized expertise.  *See Astiana v. Hain*
26   *Celestial Grp., Inc.*, 783 F.3d 753, 761 (9th Cir. 2015) (courts will defer to pending FDA determinations
     under primary jurisdiction doctrine where labeling claims concern "a particularly complicated issue that
27   Congress has committed to" FDA).

28
                                          6

1   ¶¶ 4, 99.  And he declares that Coca-Cola and unnamed others have engaged in a nebulous

2   "conspiracy with scientists" to "confuse or confound [him] and other consumers" into believing

3   that 100% fruit juice can ever be healthy to drink.  *Id.* ¶¶ 100-102, 132.  Thus, according to

4   Plaintiff, **_any_** claim about the healthfulness of fruit juice is deceptive because the juice's sugar

5   content renders it unhealthy—regardless of what other healthy nutrients the juice might contain.

6        On this basis, Plaintiff asserts that the statements that fruit juice is "Good For You" and

7   "Can be Part of a Healthy Balanced Diet" are deceptive as a matter of law—even though both

8   statements appear in direct connection to the labels' truthful claims that the Products have "No

9   Sugar Added" and are "an Excellent Source of Vitamin C."  *Id.* ¶¶ 19-20.  Plaintiff thus alleges

10  that Coca-Cola has violated California's Unfair Competition Law ("UCL"), False Advertising Law

11  ("FAL'), and California Consumers Legal Remedies Act ("CLRA"), and brings common-law

12  claims for breach of express and implied warranties, negligent and intentional misrepresentation,

13  and unjust enrichment.  *Id.* ¶¶ 157-228.  He seeks to represent a nationwide class of "all persons"

14  who purchased the Products during the four years preceding the filing of his Complaint.  *Id.* ¶ 48.

15                                    **ARGUMENT**

16  **I.    PLAINTIFF FAILS TO STATE A PLAUSIBLE CLAIM OF DECEPTION**

17       Plaintiff does not and cannot point to an objectively misleading statement on the Products'

18  labels.  To state a viable claim under the UCL, FAL or CLRA, , Plaintiff must plausibly allege that

19  the Products' labels are misleading "from the vantage point of a reasonable consumer."  *Reid v.*

20  *Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015).  Failure to allege a "plausible

21  misunderstanding" is grounds for dismissal at the pleadings stage.  *Becerra v. Dr. Pepper/Seven*

22  *Up, Inc.*, 945 F.3d 1225, 1229 (9th Cir. 2019).  Plaintiff's Complaint fails this test.

23       The crux of Plaintiff's claim of deception is that the statements "Good for You" and "Part

24  of a Healthy, Balanced Diet" are misleading because the natural sugar content of fruit juice

25  necessarily renders the Products unhealthy.[3]  But Plaintiff has not identified a single

26

27  _____

    [3] Plaintiff also tangentially claims that the "images of whole fruit" on the Products' labels misled him to
28  believe the Products are healthy.  *See* Compl. ¶ 130.  To the extent that Plaintiff intends to make a standalone

1    misrepresentation about the Products' sugar content on the labels at issue here.  Nor does he dispute

2    that the Nutrition Facts panels clearly and accurately disclose the amount of sugar in the Products.

3    Yet he insists that reasonable consumers are likely to overlook this easily accessible information,

4    and instead interpret the Products' non-sugar-related statements as guarantees of low sugar.

5          That far-fetched theory has rightly been rejected as contrary to common sense.  Time and

6    again, courts of this District have held that "no reasonable consumer is deceived regarding [a]

7    product's sugar content, and whether it may or may not be healthy as a result, when the product's

8    label plainly discloses the amount of sugar in the product."  *Truxel v. Gen. Mills Sales, Inc.*, No.

9    C 16-04957 JSW, 2019 WL 3940956, at *4 (N.D. Cal. Aug. 13, 2019) (emphasis added).  In *Clark*

10   *v. Perfect Bar*, for example, the plaintiffs claimed that the product's "packaging led them to believe

11   that the bars would be 'healthy' when, in supposed point of fact, the [product's] sugar rendered

12   them unhealthy or, in the alternative, less healthy from what they otherwise had believed."  2018

13   WL 7048788, at *1 (N.D. Cal. Dec. 21, 2018), *aff'd*, 816 F. App'x 141 (9th Cir. 2020).  In rejecting

14   that argument as "untenable," the court stated: "No consumer, on notice of the actual ingredients

15   described on the packing including honey and sugar, could reasonably overestimate the health

16   benefits of the bar . . . .  The honey/sugar content was properly disclosed — that is the end of it —

17   period."  *Id.*  Other courts have reached a similar conclusion.  *See, e.g., Andrade-Heymsfield v.*

18   *NextFoods, Inc.*, 2022 WL 1772262, at *4 (S.D. Cal. Apr. 27, 2022) (dismissing claims where the

19   "sugar content [was] clearly labeled on the packaging"); *Cheslow v. Ghirardelli Chocolate Co.*,

20   445 F. Supp. 3d 8, 20 (N.D. Cal. 2020) ("District courts also recognize that where the actual

21   ingredients are disclosed, a plaintiff may not ignore the ingredient list.").

22

23   claim of deception on the basis of these images, this theory should be rejected out of hand.  Plaintiff cannot
     plausibly allege that consumers thought they would find whole fruit inside the juice boxes at issue here.

24   The only reasonable interpretation of these images is that the juice in the Products came from the pictured
     fruits—and, by Plaintiff's own admission, that representation is true.  At best, these images tell reasonable

25   consumers what they already know—that they are buying fruit juice.  That representation is neither
     inaccurate nor misleading, and cannot supply the basis for a claim of deception.  *See, e.g.*, *Red v. Kraft*

26   *Foods, Inc., No. CV 10–1028–GW(AGRx),* 2012 WL 5504011, at *3 (C.D. Cal. Oct. 25, 2012) (dismissing
     complaint premised on the assumption that consumers "will read a true statement [o]n a package . . . and

27   assume things about the products other than what the statement actually says").

28                                                        8

In embracing this principle, courts have also recognized that the healthfulness of a food or beverage cannot be reduced to a single metric such as sugar content.  Whether a beverage with naturally occurring sugar is "healthy" will depend, for example, on its other nutritional benefits, the particular health needs of the individual, the amount of the beverage being consumed, and the individual's overall diet.  Thus, when a product's "actual ingredients [are] fully disclosed," reasonable consumers can "decide for themselves how healthy or not the sugar content would be." *Clark*, 2018 WL 7048788 at *1; *see also Truxel*, 2019 WL 3940956 at *4 ("[T]here is no consensus on just how much sugar is healthy for consumption."); *Yoshida v. Campbell Soup Co.*, 2022 WL 1819528, at *1 (N.D. Cal. May 27, 2022) (where "the actual sugar content is plainly stated . . . a reasonable consumer would have all the information he or she needed to decide whether the juices are a net benefit or detriment to personal health").

Indeed, as discussed above, the very Dietary Guidelines on which Plaintiff relies make clear that "100% fruit juice without added sugars ***can*** be part of a healthy dietary pattern," and recommend that "[b]everages that contribute beneficial nutrients, such as … 100% juice," should be among "the primary beverages consumed" by Americans.  *See supra* at 4 (emphasis added); *see also* Compl. ¶ 89 (admitting that the Dietary Guidelines issued by the U.S. Departments of Health and Human Services and Agriculture state that "100% fruit juice without added sugars can be part of a healthy dietary pattern").  Instead, the relative healthfulness of the Products will depend on a variety of factors specific to Plaintiff's own diet and lifestyle.  And the Products' labels give him all the information he needs to "decide for [himself]" whether the natural sugar content of fruit juice is too high for his dietary needs.  *Clark*, 2018 WL 7048788 at *1.  He cannot demand any more than that under California law.

Plaintiff will no doubt point to other decisions of this District that have held that the "motion to dismiss stage is not the place to decide" whether consumers are capable of understanding the connection between a product's health-related claims and its sugar content.  *See Johnson-Jack v. Health-Ade LLC*, 587 F. Supp. 3d 957, 967 (N.D. Cal. 2022) (summarizing cases

that have adopted this reasoning).  These case are distinguishable, in part, because they concerned the presence of *added* sugars—not natural sugars like those present in 100% juice, which "can be part of a healthy dietary pattern."  Compl. ¶ 89.  *See, e.g.*, *Yoshida*, 2022 WL 1819528, at *1 (finding "healthy greens" claims were not deceptive on account of naturally occurring sugars in product, and distinguishing case from others that "involved added sugars").

More fundamentally, however, these decisions are contrary to the law of this Circuit.  The test under California law is whether the labels at issue would deceive a *reasonable consumer—*not whether they "might conceivably be misunderstood by some few consumers viewing [them] in an unreasonable manner." *Becerra*, 945 F.3d at 1228; *see also Stuart v. Cadbury Adams USA, LLC*, 458 F. App'x 689, 691 (9th Cir. 2011) (affirming dismissal because "[o]nly an unreasonable consumer would be confused or deceived by" the challenged label).  Plaintiff cannot plausibly assert that reasonable consumers are unaware that a product's sugar content may be relevant to their assessment of the product's health benefits.  Nor does he dispute that reasonable consumers can easily find the information needed to make that assessment on the Products' Nutrition Facts.  Indeed, the same panel where the purportedly deceptive health claims appear directs consumers to "see [the] nutrition facts for sugar and calorie content."  *See supra* at 4.  On these facts, common sense holds that a reasonable consumer would have all the information he needs to decide for himself whether the Products should "be part of [his] healthy dietary pattern."  Compl. ¶ 89; *see also Andrade-Heymsfield*, 2022 WL 1772262, at *5 ("[A] reasonable consumer would not be misled given that the sugar content is clear, explicit, and otherwise not contrary to the promotion of [the other health benefits] on the packaging label."); *see also Weiss v. Trader Joe's*, 838 F. App'x 302, 303 (9th Cir. 2021) ("Simply put, a reasonable consumer does not check her common sense at the door of the store.").  Plaintiff's claims should be dismissed for this reason alone.

## II.    PLAINTIFF'S CLAIMS ARE PREEMPTED BY FEDERAL LAW

Even if Plaintiff had stated a viable claim of deception—and he has not—his claims would still require dismissal because they are preempted by federal law.  The FDCA contains an express

preemption clause that prohibits states from imposing requirements for the labeling of foods and beverages that are "not identical to" certain federal requirements, including those related to the characterization of nutrients in a product. *See* 21 U.S.C. § 343(r) (prescribing rules governing labels that "characterize[] the level of any nutrient"); 21 C.F.R. § 100.1(c)(4) (state laws are preempted if they "directly or indirectly impose[] obligations" that "[d]iffer from those specifically imposed by or contained in the applicable provision [of the FDCA] (including any implementing regulation)"). Plaintiff's claims are squarely preempted under this framework.

As explained above, both "sugars" and "vitamins" qualify as "nutrients" under the FDCA. *See* 21 U.S.C. § 343(q)(1)(D)(E); *see supra* at 6. And it is well established that statements like "No Sugar Added" and "Excellent Source of Vitamin C" are express nutrient content claims under FDA rules. *See* 21 C.F.R. § 101.60(c)(2) (listing "No Sugar Added" as an example of a nutrient content claim); *Perez*, 2017 WL 3601998, at *6 (noting that "No Sugar Added" is a nutrient content claim); *Howard v. Hain Celestial Grp., Inc.*, 2023 WL 1960678, at *3 (Chhabria, J.) (holding that "excellent source of Vitamin C" is a nutrient content claim); *Lanovaz v. Twinings N. Am.*, Inc., No. C-12-02646-RMW, 2013 WL 675929, at *5 (N.D. Cal. Feb. 25, 2013) (describing the phrase "excellent source of" as one of the classic "operative words in nutrient content claims").[4]

Moreover, FDA rules generally allow food or beverage labels to make "implied nutrient content claims," which include any claim that "[s]uggests that the food, because of its nutrient content, may be useful in maintaining healthy dietary practices and is made in association with an explicit claim or statement about a nutrient." 21 C.F.R. § 101.13(b)(2). And although FDA "prohibits even true implied nutrient content claims" in certain cases "where the product contains another 'disqualifying' nutrient that exceeds an amount established by regulation," the agency has

---

[4] Plaintiff briefly argues that the addition of Vitamin C to the Products violates FDA's "fortification policy," which he claims allows fortification "in only four" circumstances under 21 C.F.R. § 104.20. *See* Compl. ¶ 123. This is incorrect—the same regulation states that "[n]utrient(s) may be added to foods as permitted or required by applicable regulations established elsewhere in this chapter." *Id.* § 104.20(f). And another section of that chapter, 21 C.F.R. § 101.65(d)(2)(iv), permits the addition of Vitamin C to support a nutrient content claim, so long as the product did not have less than 10% of the recommended daily intake of Vitamin C prior to fortification. Plaintiff makes no allegation that the Products fell below that 10% threshold here.

already "identified [the] disqualifying nutrients" that fall under this prohibition—and "[s]ugar is not one of them." *Krommenhock*, 255 F. Supp. 3d at 956; *see also Clark v. Perfect Bar, LLC*, 816 F. App'x 141, 143 (9th Cir. 2020) (explaining that FDA regulations pointedly "***exclude[]*** sugar from an enumerated list of nutrient levels that may preclude a product from making health claims"). Thus, under the preemptive regulatory framework, manufacturers are allowed to make implied nutrient content claims on product labels—*regardless* of the product's sugar content. *See LeGrand v. Abbott Lab'ys*, No. 22-CV-05815-TSH, 2023 WL 1819159, at *6 (N.D. Cal. Feb. 8, 2023) ("[Plaintiff's] state law claims will be preempted to the extent she argues that nutrient content claims on [the product's] labels are misleading because they indicate the products are healthy despite containing high levels of sugar").

The Products here comply with these regulations to the letter. The statements "Good For You" and "Part of a Healthy Balanced Diet" appear directly adjacent to the nutrient content claims that the Products have "No Sugar Added" and are an "Excellent Source of Vitamin C." *See supra* at 4. These statements thus have a contextual "connection to" the label's express nutrient content claims. *Krommenhock*, 334 F.R.D. at 571; *see also LeGrand*, 2023 WL 1819159, at * 8 (holding that health claims were implied nutrient claims because, "[a]lthough [they were] not immediately next to [the nutrient content claim], they [were] in the same graphic, and [the health claims] appear[ed] to signify that the product [was] healthy, in part, because it provide[d] high levels of [the specified nutrient]"). And because FDA has chosen not to include sugar as a "disqualifying nutrient" under the relevant rules, the sugar content of the Products is simply irrelevant to whether Coca-Cola is permitted to make the implied nutrient content claims at issue here. Plaintiff's state-law challenge to these statements is flatly inconsistent with FDA labeling rules, and it is therefore preempted by federal law. *See Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052, 1073 (N.D. Cal. 2017) ("[A]ny claim under state law solely premised on the notion that [the drink's] high sugar content made its … implied nutrient content claims misleading is preempted by the FDA's express decision to not recognize sugar as a disqualifying nutrient." (citation omitted)); *Clark*, 816

1    F. App'x at 143 ("Allowing a claim of misbranding under California law based on misleading

2    sugar level content would 'indirectly establish' a sugar labeling requirement 'that is not identical

3    to the federal requirements,' a result foreclosed by our precedent").

4    **III.    PLAINTIFF'S ANCILLARY CLAIMS ALSO FAIL**

5            Plaintiff's state-law claims fail for the same reasons his UCL, FAL and CLRA do: he

6    cannot plausibly show that the Products' labels are false or misleading in any way, and his claims

7    are preempted by federal law.  These allegations also fail for other reasons, as set forth below.

8            **A.    Express and Implied Warranties**

9            Plaintiff's express warranty claim should be dismissed because the Products' labels do not

10   contain a false "affirmation of fact or promise" that is "specific and unequivocal."  *Baird v.*

11   *Samsung Elecs. Am., Inc.*, 522 F. Supp. 3d 679, 685 (N.D. Cal. 2021).  The Products truthfully

12   represent that the juice boxes contain beneficial nutrients that can "be part of a healthy dietary

13   pattern," Compl. ¶ 89, and thus Plaintiff  cannot adequately plead that the labels made an

14   "unequivocal[ly]" false statement.  *Id.*  Further, the implied warranty of merchantability only

15   provides "for a *minimum* level of quality."  *Stearns v. Select Comfort Retail Corp.*, 2009 WL

16   1635931, at *8 (N.D. Cal. June 5, 2009).  A breach of this warranty thus occurs only "if the product

17   lacks 'even the most basic degree of fitness for ordinary use.'"  *Pershing Pac. W., LLC v. Ferretti*

18   *Grp., USA, Inc.*, 2013 WL 275676, at *7 (S.D. Cal. Jan. 24, 2013) (citation omitted).  Plaintiff

19   cannot plausibly allege that the fruit juice boxes he purchased were unfit for consumption.  Indeed,

20   he presumably consumed the Products and enjoyed them, since he alleges that he purchased them

21   multiple times during the Class Period.  Compl. ¶ 129.  These claims must be dismissed.

22           **B.    Negligent and Intentional Misrepresentation**

23           Plaintiff's negligent misrepresentation claim should be dismissed because it is duplicative

24   of his express warranty claim.  *See Stearns v. Select Comfort Retail Corp.*, No. 08-2746 JF, 2009

25   WL 1635931, at *12 (N.D. Cal. June 5, 2009) ("[A]ny allegations that reference statements made

26   in the express warranty … cannot form the basis of a negligence claim.").  Further, this cause of

27

28                                              13

1    action requires Plaintiff to show that Coca-Cola had no "reasonable ground to believe [the

2    challenged statements were] true." *Baird*, 522 F. Supp. 3d at 686.  Plaintiff cannot plausibly assert

3    that Coca-Cola had "no reasonable ground" to believe that the Products can be part of a healthy

4    diet when the federal government itself has expressly stated that such beverages "***can*** be part of a

5    healthy dietary pattern," and that beverages with 100% juice should be among "the primary

6    beverages consumed" by Americans. *See supra* at 9 (emphasis added).

7         Likewise, to state a claim for intentional misrepresentation "based on the same factual

8    allegations as a breach of contract claim, a plaintiff must show that 'the duty that gives rise to tort

9    liability is either completely independent of the contract or arises from conduct which is both

10   intentional and intended to harm.'"  *Costa v. Reliance Vitamin Co.*, No. 3:22-CV-04679-WHO,

11   2023 WL 2989039, at *5 (N.D. Cal. Apr. 18, 2023).  To show intentional conduct, the plaintiff

12   must plausibly allege that the defendant "knew of the falsity of the statement[s]" challenged in his

13   complaint.  *Marble Bridge Funding Grp., Inc. v. Euler Hermes Am. Credit Indem. Co.*, 225 F.

14   Supp. 3d 1034, 1039 (N.D. Cal. 2016).  As explained above, Plaintiff's allegations establish, at

15   best, that reasonable minds may disagree about the health benefits of fruit juice—in fact, Plaintiff

16   himself apparently disagrees with the judgment of U.S. federal agencies on this issue. *See supra*

17   at 9.  On these facts, Plaintiff cannot show that Coca-Coca had knowledge of the purported falsity

18   of the statements at issue here.  His intentional misrepresentation claim should be dismissed.

19         **C.    Unjust Enrichment**

20         Plaintiff's unjust enrichment claim is derivative of his deceptive-labeling claims and fails

21   for the same reasons his UCL, FAL and CLRA claims do.  *See, e.g.*, *Choon's Design, LLC v.*

22   *ContextLogic Inc.*, No. 19-cv-05300 (HSG), 2020 WL 6891824, at *5 (N.D. Cal. Nov. 24, 2020)

23   ("Plaintiff's unjust enrichment claim also fails because it is a derivative cause of action."); *Frison*

24   *v. Accredited Home Lenders, Inc.*, No. 10-cv-777 (JM), 2011 WL 2729241, at *5 (S.D. Cal. July

25   13, 2011) ("Because all other claims against [the defendant] are dismissed, Plaintiff's claim for

26   unjust enrichment is also dismissed . . . .").

27

28
                                         14

1  **IV.    PLAINTIFF LACKS STANDING TO SEEK INJUNCTVE RELIEF**

2          Plaintiff also lacks Article III standing to seek injunctive relief because he does not

3  plausibly allege a "real and immediate threat of repeated injury." *Bates v. United Parcel Serv.*,

4  *Inc.*, 511 F.3d 974, 985 (9th Cir. 2007).  Plaintiff claims that injunctive relief is warranted because

5  absent an injunction, "he may not be able to reasonably determine whether the [Products] have

6  been reformulated to conform to the misleading claims."  Compl. ¶ 144.  But the entire premise of

7  the Complaint is that the Products' sugar content—clearly identified on the label—renders them

8  unhealthy.  Although Plaintiff insists that he did not previously know sugar could affect his health

9  because he is not "a food scientist" (*id.* ¶ 133), he claims to know better now.  If he has any future

10  questions about the Products' sugar content, he can simply check the Nutrition Facts—as the label

11  already instructs him to do—and make his own determination whether the Products are "healthy."

12          Plaintiff's admission that he knows precisely how to verify the accuracy of the Products'

13  labels is fatal to his request for injunctive relief.  Courts routinely hold that where a plaintiff cannot

14  "reasonably claim that he has no way of determining whether Defendant's representations are true"

15  in the future, he "lacks standing" to pursue an injunction. *Cimoli v. Alacer Corp.*, 546 F. Supp. 3d

16  897, 906 (N.D. Cal. 2021) (citation omitted); *see also id.* ("[S]everal district courts relying on

17  *Davidson* have found a plaintiff lacks standing where the plaintiff could 'easily discover whether

18  a previous misrepresentation had been cured without first buying the product at issue.'" (collecting

19  cases)); *Fernandez v. Atkins Nutritionals, Inc.*, 2018 WL 280028, at *15 (S.D. Cal. Jan. 3, 2018)

20  (no standing because plaintiff already had the "knowledge that enable[d] her to make an

21  appropriate choice with respect to [the defendant's] products").  Plaintiff can readily consult the

22  Products' labels to determine their sugar content, and decide for himself whether the Products meet

23  his personal definition of "Good for You."

                                    **CONCLUSION**

25          For the reasons set forth above, the Complaint should be dismissed, in its entirety, with

26  prejudice.

27

28                                        15

1  Dated:  June 5, 2023

2                              Respectfully submitted,

3                              /s/ Steven A. Zalesin

4                              Steven A. Zalesin (*Pro Hac Vice*)
                               sazalesin@pbwt.com
5                              Jane Metcalf (*Pro Hac Vice*)
                               jmetcalf@pbwt.com
6                              Dakotah M. Burns (*Pro Hac Vice*)
                               dburns@pbwt.com
7                              PATTERSON BELKNAP WEBB & TYLER LLP
8                              1133 Avenue of the Americas
                               New York, New York  10036
9                              Telephone (212) 336-2110
                               Facsimile (212) 336-2111
10

11                             Gary T. Lafayette (SBN 88666)
                               glafayette@lkclaw.com
12                             Brian H. Chun (SBN 215417)
                               bchun@lkclaw.com
13                             LAFAYETTE & KUMAGAI LLP
                               1300 Clay Street, Suite 810
14                             Oakland, California  94612
                               Telephone: (415) 357-4600
15                             Facsimile: (415) 357-4605

16
                               *Attorneys for Defendant The Coca-Cola Company*
17

18

19

20

21

22

23

24

25

26

27

28