UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| GARY REYNOLDS,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>THE COCA-COLA COMPANY,<br><br>　　　　Defendant. | Case No. 23-cv-01446-VC (RMI)<br><br>**ORDER RE: DISCOVERY DISPUTE**<br><br>Re: Dkt. No. 58 |

　　　　Now pending before the court is a discovery dispute in a putative class action case where Plaintiff contends that the labeling for Minute Maid juice boxes and drinks misleadingly claims that those products are "part of a healthy diet" when scientific evidence indicates that consuming such beverages increases the risk of various diseases due to their sugar content. *See* Ltr. Br. (dkt. 58) at 2. At issue is Plaintiff's request to compel the production of all documents (spanning the ten-year period prior to the filing of this action) concerning the effects on the human body of consuming juices (containing free sugars) and whole fruits. *Id*. Pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-1(b), the court finds the matter suitable for disposition without oral argument. The hearing on this matter, currently scheduled for, January 9, 2024, is hereby **VACATED**. For the reasons stated below, Plaintiff's request to compel the documents at issue is denied.

　　　　By way of background, on October 25, 2023, Judge Chhabria granted Defendant's motion to dismiss in part. See Order on Mtn. to Dismiss (dkt. 50). The Court held that the statement, "Good for You" (appearing on the label as part of the statement, "Minute Maid Juice Boxes are Good for You!"), "is an allowed implied nutrient content claim, and thus state law challenges to it

1  are preempted by federal regulation." *Id*. at 1. The Court added that "[t]he same analysis may well
2  apply to the 'Part of a Healthy Balanced Diet' statement,'", but noted that "a different regulatory
3  provision governs implied nutrient content claims that make explicit reference to health." *Id*. at 2.
4  Under that provision, the Court explained, companies may use claims of healthiness (or related
5  claims) as an implied nutrient claim in labeling their products only if certain conditions are met.
6  *Id*. One of those conditions, is that, if the item has been fortified with vitamin C to reach a quantity
7  of ten percent of the daily recommended amount, then the addition must comply with the
8  fortification policy in the regulations. *Id*. Because the complaint alleges that the juice boxes
9  labeling violates the referenced fortification policy, and because Defendant did not affirmatively
10 prove its exemption from, or compliance with, said policy at the pleadings stage, the Court
11 concluded that Plaintiff's challenge to the statement, "Part of a Healthy Balanced Diet," has stated
12 a claim. *Id*. at 3. However, because the Court noted that the same preemption analysis "may well
13 apply to the 'Part of a Healthy Balanced Diet Statement'" (*id*. at 2), the Parties were instructed to
14 be prepared to discuss (at an upcoming case management conference) "whether discovery should
15 be initially limited to the fortification issue" (*id*. at 5). In the end, the Parties agreed, and the Court
16 so ordered, "that discovery in the first instance should focus on Coca-Cola's exemption from, or
17 compliance with, the fortification policy." *See* Min. Entry (dkt. 52).
18      As mentioned, Plaintiff seeks to compel all documents for a ten-year period, preceding the
19 filing of the complaint in this case, concerning the effects on the human body of consuming juices
20 containing free sugars, and concerning the effects on the human body of consuming whole fruits.
21 *See* Ltr. Br. (dkt. 58) at 3. In response to Defendant's assertions that the request is outside the
22 scope of initial discovery – as circumscribed by the Court – Plaintiff suggests that the purpose of
23 the FDA's fortification policy is to promote a desirable level of nutritional quality in the nation's
24 food supply while preventing the indiscriminate addition of nutrients to foods that could create
25 nutrient imbalances. *Id*. (citing 21 C.F.R. § 104.20(a)). Plaintiff adds that the FDA's fortification
26 policy allows for fortification in four circumstances. *Id*. (citing 21 C.F.R. § 104.20(b)-(e)).
27 Plaintiff states further that Defendant has claimed that, in the present instance, it relies on §
28 104.20(b), which permits fortification to "correct a dietary insufficiency recognized by the

2

scientific community to exist and known to result in nutritional deficiency disease if [] sufficient information is available to identify the nutritional problem and the affected population groups, and the food is suitable to act as a vehicle for the added nutrients." *Id*. (citing 21 C.F.R. § 104.20(b)-(b)(1)).

Rather than attempting to tether its discovery request (i.e., the effects of sugar on health, and the effects of eating whole fruits) to Defendant's reported reliance on § 104.20(b)-(b)(1), Plaintiff ventures to shift the premise of the debate in an effort to focus, instead, on the policy underlying fortification in general. Plaintiff suggests that in light of the overarching policy expressed in § 104.20(a) (i.e., promoting the nutritional quality in the nation's food supply), and in light of the fact that Plaintiff has alleged that the products at issue – due to their free sugar content – "increase the risk of disease," any "documents concerning the []effects on the human body of consuming juices[] are relevant to the question of whether the Minute Maid Products are an 'appropriate vehicle' for fortification." *Id*. at 4. Plaintiff submits that if Minute Maid Products do in fact increase the risk of disease as alleged, then "the FDA would not consider them appropriate vehicles for fortification," but would consider them to "be much more akin to the type of snacks that the policy prohibits fortification of." *Id*. Plaintiff relies on a certain FDA Industry Guidance document which explains that it is not appropriate to fortify certain foods such as "snacks." *Id*. Plaintiff provides a definition for "snacks" as "foods that are not naturally nutrient dense because [f]ortification of these types of snack foods could mislead consumers to believe that substitution of naturally nutrient dense foods with fortified snack foods would ensure a nutritionally adequate diet." *Id*. Thus, Plaintiff concludes, documents concerning the health effects of consuming juice bear directly on whether the Products are an appropriate vehicle for vitamin C fortification. *Id*.

Plaintiff's arguments are unpersuasive. First, Plaintiff's conclusory assumption that Minute Maid Products fall with the category of snack foods is unsubstantiated. Plaintiff has not presented any basis on which one could conclude as such – neither has any indication to that effect been identified, nor has any citation to any FDA regulation been made. Indeed, the only regulatory guidance to that effect by the FDA is that snack foods "include chips, pretzels, and other novelty snacks." *See* 21 C.F.R. § 1703(n)(37); *see also Hall v. Welch Foods, Inc.*, 2019 U.S. Dist. LEXIS

3

1   126803, *15 (D. N.J., July 19, 2019) (rejecting the assumption that that Welch's Fruit Snacks
2   qualify as a "snack food" merely because the word "snack" is in the name.). Second, as to
3   Plaintiff's conclusory assertion that sugar content alone renders the products at issue unsuitable
4   vehicles for vitamin C fortification under FDA policy – as Defendant notes, Plaintiff "cites no
5   rule, guidance, or caselaw to support the claim that a product's natural sugar content, without
6   more, would render it 'unsuitable' under these rules." *See* Ltr. Br. (dkt. 58) at 6 (citing *Gumner v.*
7   *Pepsico, Inc.*, 2023 U.S. Dist. LEXIS 231587, *7 (C.D. Cal., Aug. 3, 2023) (finding that Plaintiff
8   had plausibly alleged that Gatorade Fit was not a suitable vehicle for vitamin A and vitamin C
9   fortification because it was marketed to athletes -- a population group not affected by vitamin A
10  and vitamin C deficiencies, while explaining that "[t]he selection of a suitable vehicle for the
11  addition of [a nutrient] is important and depends largely on the eating habits of a given culture or
12  country.")). Unlike *Gummer* (where an argument could be made that Gatorade Fit was not a
13  suitable vehicle for vitamin fortification under 21 C.F.R. § 104.20(b)(1) **_because_** the target
14  population group, athletes, had not been identified with any vitamin A or C deficiency), Plaintiff
15  here has not made any such logical connection to indicate that fruit juice cannot act as an
16  appropriate "vehicle," merely because of its natural sugar content.
17          Defendant adds that "Plaintiff does not (and cannot) claim that FDA has ever suggested a
18  beverage cannot be fortified with vitamin C simply because it contains some natural sugar . . .
19  FDA rules state just the opposite." Ltr. Br. (dkt. 58) at 6 (citing *Krommenhock v. Post Foods*,
20  LLC, 255 F. Supp. 3d 938, 956 (N.D. Cal. 2017) ("[T]he FDA has approved the use of implied
21  nutrient claims in certain circumstances, but prohibits even true implied nutrient content claims
22  where the product contains another 'disqualifying' nutrient that exceeds an amount established by
23  regulation. [] The FDA has identified disqualifying nutrients, including total fat, saturated fat,
24  cholesterol, and sodium. Sugar is not one of them.")); *see also Ackerman v. Coca-Cola Co.*, 2010
25  U.S. Dist. LEXIS 73156, *29-30 (E.D.N.Y., July 21, 2010) ("As a matter of federal law, therefore,
26  the presence of sugar is not a disqualifying nutrient which would prohibit the defendants from
27  'touting the purported benefits' [] of the other ingredients in their beverage, whether through
28  health claims or express or implied claims of nutrient content. The FDA's decision to exclude

4

sugar as a disqualifying ingredient is entitled to the same preemptive force as statutory law."); *see also Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1122 (N.D. Cal. 2010) ("As a matter of federal law, then, the presence of trans fats alone is not a 'disqualifying' nutrient which would prevent Quaker Oats from emphasizing whatever other health benefits are available from the Bars' other ingredients or because it lacks certain ingredients. Because the Agency has expressly decided not to recognize trans fats as a disqualifying nutrient, plaintiffs' state law claim is inconsistent with subsection (r) and its regulations to the extent it depends on the presence of trans fats to render the content claims misleading.").

For these reasons, the court agrees with Defendant that Plaintiff's discovery request falls outside of the currently-circumscribed scope of phase-1 discovery because it is based on the unfounded assumption that a beverage cannot be fortified with vitamin C under the relevant regulatory scheme simply because it contains sugar. Indeed, this is why Plaintiff's effort to compel the discovery he prematurely seeks had to rely on the untenable argument that if the goal of the fortification policy is to promote a desirable level of nutritional quality in the nation's food supply, and because sugar consumption is inconsistent with that goal, therefore the products at issue *must be* unsuitable vehicles for fortification and discovery into the effects of sugar consumption and whole fruit consumption would prove that. Plaintiff's logic is based on faulty assumptions. For the above-stated reasons, as well as for the other reasons articulated by Defendant (*see* Ltr. Br. (dkt. 58) at 4-6), the court **DENIES** Plaintiff's motion to compel because it seeks materials that are outside the scope of phase-1 discovery.

**IT IS SO ORDERED.**

Dated: January 8, 2024

_____
ROBERT M. ILLMAN
United States Magistrate Judge

5